**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3504-19

THOMAS GORMAN,

     Plaintiff-Appellant,

v.

BOROUGH OF AUDUBON,

     Defendant-Respondent.

_____

Argued November 17, 2021 – Decided December 16, 2021

Before Judges Gilson, Gooden Brown, and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-1230-18.

Christopher A. Gray argued the cause for appellant (Sciarra & Catrambone, LLC, attorneys; Christopher A. Gray, of counsel and on the briefs; Frank C. Cioffi, on the briefs).

Joseph G. Antinori argued the cause for respondent (Brown & Connery, LLP, attorneys; Joseph G. Antinori, on the brief).

PER CURIAM

Plaintiff Thomas Gorman was a police officer who was charged with a second-degree crime. He entered the Pretrial Intervention Program (PTI) and agreed to forfeit his position as a police officer with the Borough of Audubon (Borough). Thereafter, plaintiff was granted ordinary disability retirement benefits by the Board of Trustees of the Police and Firemen's Retirement System (the Board). He sued the Borough when it refused to provide him and his family with medical benefits after he had left his employment. Plaintiff claimed that he was entitled to those benefits under a collective bargaining agreement (CBA) as an officer who had retired on disability and the denial of those benefits was discriminatory, in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50.

Plaintiff appeals from a March 31, 2020 order granting summary judgment to the Borough and dismissing plaintiff's complaint with prejudice. We affirm. The indisputable material fact is that plaintiff forfeited his position as a police officer as a condition of PTI. Consequently, he was not entitled to medical benefits under the CBA, nor did he make any showing of discrimination under the LAD.

A-3504-19

I.

We discern the facts from the summary judgment record, viewing them in the light most favorable to plaintiff, the party opposing summary judgment. See Richter v. Oakland Bd. of Ed., 246 N.J. 507, 515 (2021) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). Plaintiff began working for the Borough as a police officer in 2003. In 2015, he was a member of the Policemen's Benevolent Association (PBA), Local No. 328, which had a CBA with the Borough.

The events that gave rise to plaintiff leaving his position as a police officer occurred on September 24, 2015. For several days before September 23, 2015, plaintiff had been in Las Vegas attending the annual PBA convention. According to plaintiff, he had been abusing alcohol for years and drank heavily while at the convention.

Plaintiff came home on September 23, 2015, earlier than originally planned. The following day, he argued with his wife and parents. Plaintiff's wife, who was also a Borough police officer, called another Borough police officer, Corporal David Bauer, for assistance. After Bauer arrived, plaintiff threw a punch at Bauer, starting an altercation. While plaintiff and Bauer were struggling, plaintiff grabbed Bauer's service weapon and the weapon discharged,

A-3504-19

but no one was hurt by the discharge.  Shortly thereafter, plaintiff was charged criminally with second-degree disarming a law enforcement officer in violation of N.J.S.A. 2C:12-11(a).

Following the incident, plaintiff was taken to several hospitals, and he received treatment at two in-patient substance-abuse facilities for over thirty days.  He was diagnosed with moderate alcohol use disorder, with recent past alcohol withdrawal delirium.  On November 12, 2015, a treating doctor cleared plaintiff to return to work without restrictions.

Sometime after November 15, 2015, plaintiff was informed by the Borough's chief of police that he could not return to work because he was facing criminal charges and there was an ongoing internal affairs investigation related to the September 24 incident.  Plaintiff was also advised that, effective November 28, 2015, his status would change from suspended with pay to suspended without pay.

On August 31, 2016, plaintiff applied for ordinary disability retirement benefits with the New Jersey Division of Pensions and Benefits.  He requested a retirement date effective September 1, 2016, acknowledged he was currently charged with disarming a police officer, and stated he suffered from "a

psychological issue and was diagnosed with alcohol withdrawal with delirium and psychotic features."

On December 8, 2016, plaintiff resolved his criminal charges by entering PTI. As a condition of PTI, plaintiff agreed he would "immediately" forfeit his "current employment" with the Borough's Police Department. He also agreed to "forever forfeit[]" his right to hold any public office or position in New Jersey. Those forfeitures were memorialized both in the PTI order and an "Order Disqualifying [Plaintiff] from Holding Public Office," which plaintiff and his counsel signed on December 8, 2016.

The disqualification order was filed on January 5, 2017. Thereafter, copies of that order and the PTI order were provided to the Borough. On January 24, 2017, the Borough wrote to plaintiff informing him that it accepted his forfeiture, and his employment was terminated "effective the date of [the] [c]ourt filing on January 5, 2017."

On February 17, 2017, the Division of Pensions informed plaintiff that he was ineligible to file for ordinary disability and his application was denied. Two weeks later, on March 1, 2017, plaintiff appealed that decision to the Board.

On May 9, 2017, the Board wrote to plaintiff's counsel advising that it would approve plaintiff's request to file for ordinary disability retirement. The

5

Board explained that it had "based its determination on the fact that [plaintiff's] claim for disability is the direct reason for his termination and therefore the Board's approval is consistent with N.J.A.C. 17:1-6.4." The Board also acknowledged that, on December 8, 2016, an order had been entered disqualifying plaintiff from holding public office. At a meeting on November 13, 2017, the Board approved plaintiff's application for ordinary disability retirement benefits effective September 1, 2016, the date of his original application.

Thereafter, plaintiff requested the Borough to provide him and his family with medical insurance coverage. He relied on article 29 of the CBA between PBA Local 328 and the Borough. Article 29 stated that an employee who retires on a state-approved disability pension will receive medical insurance paid for by the Borough. The Borough denied plaintiff's request, reasoning that plaintiff had forfeited his employment with the Borough in resolving his criminal charge and entering PTI.

In April 2018, plaintiff sued the Borough, alleging that it had breached the CBA and had discriminated against him in violation of LAD. Following discovery, the parties cross-moved for summary judgment. After hearing oral argument, on March 31, 2020, the trial court denied summary judgment to

plaintiff, granted summary judgment to the Borough, and dismissed plaintiff's complaint with prejudice. The court explained its reasons for the rulings on the record and entered an order that same day.

## II.

On this appeal, plaintiff makes three main arguments, contending that the trial court erred in granting summary judgment to the Borough because (1) the Borough breached the CBA; (2) there were disputed issues of material fact concerning whether the Borough terminated him for discriminatory reasons related to his alleged alcohol disability; and (3) there were disputed issues of material fact concerning whether the Borough failed to accommodate plaintiff's alcohol-related disability by not providing him with continued medical insurance. We reject these arguments because the indisputable material fact is plaintiff forfeited his position as a police officer.

We review a grant of summary judgment de novo, using "the same standard that governs the motion judge's" decision. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018). "That standard mandates that summary judgment be granted 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the

moving party is entitled to a judgment or order as a matter of law.'" Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).  "An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande v. St. Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)).  In our review, we owe "no special deference" to the trial court's legal analysis.  RSI Bank, 234 N.J. at 472.

It is indisputable that plaintiff forfeited his position as a Borough police officer on December 8, 2016.  That fact is established in two court orders, one of which plaintiff and his counsel signed. We must determine the effects of that forfeiture under the CBA and the LAD.

1.      The Claim Under the CBA

Plaintiff's position as a police officer with the Borough was covered by a CBA between PBA Local 328 and the Borough.  The CBA states that police officers who retired after satisfying certain conditions will continue to receive medical insurance coverage paid for by the Borough.  In that regard, article 29 of the CBA stated, in relevant part:

> For employees retiring . . . on a State approved disability pension as per Chapter 88:PL 1974, the Borough shall provide a fully paid [B]lue [C]ross and [B]lue [S]hield medical benefit plan or a substantially equal or better medical plan carried by the Borough.

Plaintiff did not retire on a state-approved disability pension. Instead, he forfeited his position as a Borough police officer as a condition of entering PTI to resolve a second-degree criminal charge.

Plaintiff argues that he applied for disability retirement benefits before he agreed to forfeit his position. That is true. The material fact, however, is that before the Board approved his application for ordinary disability retirement in May and November of 2017, on December 8, 2016, he forfeited his position as a Borough police officer. The plain language of the CBA states that medical benefits will be provided to "employees retiring . . . on a State approved disability pension." Under the plain and unambiguous language of the CBA, plaintiff does not get the benefit of article 29 because he did not retire.

Plaintiff also argues that article 29 requires him only to be on a state-approved disability pension and that he did not need to be "retiring" on the disability pension. That argument is also rebutted by the plain and unambiguous language of the CBA.

The issue of the Board's approval of ordinary disability retirement benefits to plaintiff is not before us. Nevertheless, we note that police officers who are voluntarily or involuntarily terminated from service due to "total forfeiture of public service" are generally not eligible to apply for disability retirement benefits. See N.J.A.C. 17:1-6.4. The regulation allowing those benefits requires that "the disability must be the reason the member left employment." Ibid. The issue that is before us is whether plaintiff qualifies for continued medical insurance coverage under the CBA. We hold that he does not because he forfeited his position, and a forfeiture is not a retirement.

2.      Plaintiff's Discrimination Claim Under LAD

"The LAD prohibits employment discrimination on the basis of a disability." Potente v. Cnty. of Hudson, 187 N.J. 103, 110 (2006) (citing N.J.S.A. 10:5-4.1, -29.1). In his complaint, plaintiff asserted two types of claims under the LAD: (1) discrimination based on a disability and (2) a violation of the LAD's public accommodation provision.

A.  The Disability Discrimination Claim

Under the LAD, "there is no single prima facie case that applies to all discrimination claims. Instead, the prima facie elements of a claim vary depending upon the particular employment discrimination claim being made."

Victor v. State, 203 N.J. 383, 409-10 (2010). To state a prima facie case for disability discrimination under the LAD, a plaintiff must allege:

> (1) a disability or the employer's perception that the employee was disabled; (2) the employee remains qualified to perform the essential functions of the job and was performing at a level that met the employer's expectations; (3) an adverse employment action because of the disability or perceived disability; and (4) the employer thereafter sought a similarly qualified individual.
>
> [Wild v. Carriage Funeral Holdings, Inc., 458 N.J. Super. 416, 429 (App. Div. 2019).]

Plaintiff has not and cannot satisfy the third element of his alleged disability discrimination claim. Plaintiff's forfeiture established that the Borough's action was not based on a disability or perceived disability; rather, it was in response to plaintiff's forfeiture of his position.

Plaintiff's arguments concerning factual disputes regarding the Borough's motivation lack validity in light of his forfeiture. In that regard, plaintiff's contentions about what might have motivated the Borough's business manager or the chief of police do not create a fact that disputes plaintiff's forfeiture of his position.

Even if plaintiff could show a prima facie disability discrimination claim, he has failed to show that the Borough was motivated by discriminatory intent.

11

In evaluating LAD claims, New Jersey has adopted the three-part burden-shifting approach outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Viscik v. Fowler Equip. Co., 173 N.J. 1, 13-14 (2002). Under that approach, a plaintiff first bears a burden of establishing a prima facie case under the LAD. Id. at 14. If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to rebut the presumption of discrimination by articulating "a legitimate, nondiscriminatory reason for the employer's action." Zive v. Stanley Roberts, Inc., 182 N.J. 436, 449 (2005) (citing Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 596 (1988)). If the employer satisfies its burden, "the burden of production shifts back to the employee to prove by a preponderance of the evidence that the reason articulated by the employer was merely a pretext for discrimination and not the true reason for the employment decision." Ibid.

The Borough asserted that it had denied plaintiff medical health benefits after he forfeited his employment with the Borough. Given that plaintiff's forfeiture of his position was embodied in two court orders, the Borough has established a legitimate, non-discriminatory reason for the denial of the health benefits. Plaintiff's agreement to that forfeiture as a condition for PTI also

12

establishes that he cannot prove that that non-discriminatory reason was a pretext.

B.    The Accommodation Claim

In his complaint, plaintiff alleged a violation of the LAD's public-accommodation provision, N.J.S.A. 10:5-12(f).  Plaintiff has not stated a public-accommodation claim.  Indeed, his counsel conceded that point at oral argument.  Moreover, plaintiff did not argue a public-accommodation claim on this appeal.  Accordingly, we deem plaintiff to have waived his LAD accommodation claim.  See N.J. Dep't of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 505-06 n.2 (App. Div. 2015) (explaining an "issue that is not briefed is deemed waived upon appeal").

Instead of arguing his public-accommodation claim, plaintiff for the first time on this appeal attempts to argue a failure-to-accommodate claim.  We decline to entertain this new claim.  See State v. Robinson, 200 N.J. 1, 20 (2009) (explaining that "appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation [was] available").  Even if we were to consider the failure-to-accommodate claim, that claim has no merit.  See Richter, 246 N.J. at 526; Caraballo v. City

of Jersey City Police Dep't, 237 N.J. 255, 268 (2019) (setting forth the elements of a failure-to-accommodate claim under the LAD).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14